Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO.  CR09-0084MJP |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | DEFENDANT CAMIE BYRON'S |
| | ) | SENTENCING MEMORANDUM |
| CAMIE BYRON, | ) | |
| | ) | **SCHEDULED FOR HEARING:** |
| Defendant. | ) | **DECEMBER 4, 2009; 1:30 P.M.** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**INTRODUCTION**

It was the best of times, it was the worst of times, it was the age of wisdom, it was the age of foolishness, it was the epoch of belief, it was the epoch of incredulity....[1]

Although written 150 years ago, Mr. Dickens' words provide an apt summary of the financial events of the last five years.  Camie Byron, and her co-

---

[1] *A Tale of Two Cities*, Charles Dickens, (1859) (Bantam Classics 1981), p. 1.

DEFENDANT CAMIE BYRON'S
SENTENCING MEMORANDUM - 1

AOKI I SAKAMOTO I GRANT LLP
ONE CONVENTION PLACE, SUITE 1525
701 PIKE STREET
SEATTLE, WA  98101-3933
(206) 624-1900

defendants, are now federal felons, having been convicted for the roles they played in this "epoch of incredulity". As will be explained more fully, Ms. Byron was but one participant in a scheme far grander, elaborate, and more widespread that was occurring throughout mortgage lending industry at large during the time she worked for Kobay and Nationwide.

This is not to say that Ms. Byron's conduct should be ignored or excused, or that she should be exempt from the legal consequences. Rather, it is important to keep in perspective that much of Ms. Byron's conduct that led to her conviction was practiced widely by thousands of others in the same industry, throughout the United States, for an extended period of time—as this context is relevant to the options for sentencing available to this Court.

**SUMMARY**

Camie Byron respectfully requests that this Court impose a "term of confinement" no greater than 24 months and that Ms. Byron be allowed to serve any term as home detention, both because such a sentence is appropriate and she is the best, and likely only, person to provide for her 11 month old baby.[2]

Ms. Byron has fully accepted responsibility for her actions and timely notified the government of her intention to plead guilty.[3] Since her release from

---

[2] The United States Probation Office recommended that this Court impose a 24 month period of "custody".

[3] A copy of Ms. Byron's letter to this Court is attached to this Sentencing Memorandum and marked as Exhibit A.

DEFENDANT CAMIE BYRON'S
SENTENCING MEMORANDUM - 2

AOKI ǀ SAKAMOTO ǀ GRANT LLP
ONE CONVENTION PLACE, SUITE 1525
701 PIKE STREET
SEATTLE, WA 98101-3933
(206) 624-1900

1   custody, more than 8 months ago, she has been in complete compliance with all

2   of the conditions of her pretrial release.   Moreover, Ms. Byron has provided

3   substantial assistance to the government during its investigation.

4       It is also evident that Ms. Byron's involvement in this case was

5   inconsistent with a more accurate, and far different, portrait of her—a supportive

6   friend, a valued family member, and a loving and dedicated mother.  Ms. Byron,

7

8   despite the mistakes she made which resulted in her conviction, has the

9   character, determination, and skill to still make something productive of her life

10  and make a positive contribution to her society.

11      A sentence consistent with these requests is appropriate, fair, and will

12  adequately punish her for her actions yet permit her to most effectively take the

13

14  steps necessary to build a better future for herself and her family.[4]

15                          **DISCUSSION**

16  ***Introduction***

17      For approximately three years, from October 2005 through October 2008,

18  Ms. Byron worked with Kobay Financial Corporation and then for Nationwide

19

20  Home Lending LLC, first as an employee and later as an independent contractor.

21  At the time of her arrest in March 2009, Ms. Byron was on maternity leave and

22  had not been actively working for more than 4 months.

23  _____

        [4] Ms. Byron is eligible for credit for time served in custody before her release of
24  one day, by Order of this Court, on March 26, 2009.  Dkt. No. 19.

25  DEFENDANT CAMIE BYRON'S                    AOKI I SAKAMOTO I GRANT LLP
    SENTENCING MEMORANDUM - 3                 ONE CONVENTION PLACE, SUITE 1525
                                              701 PIKE STREET
                                              SEATTLE, WA 98101-3933
                                              (206) 624-1900

1
2
3
4
5
6
7

Kobay and Nationwide were engaged in the business of locating potential home buyers, originating mortgage loans, preparing various documentation, and packaging and submitting loan applications to other lenders for loans.  Emerald City Escrow LLC, a related company (but not to Ms. Bryon, as she was never employed by Emerald City Escrow), was involved in the escrow functions of the real estate transactions of Kobay and Nationwide.

8
9
10
11
12
13

Ms. Byron started with Kobay at an entry level position and, eventually, became a loan officer, a position she later held at Nationwide.  As confirmed by her Plea Agreement, Ms. Byron participated in the preparation and submission of documents, with false information, for the purpose of obtaining financing for the purchase of residential real estate.[5]

14
15
16
17

Kobay was Ms. Byron's first professional employment following her graduation from college.  Although Ms. Byron had no prior experience or education in real estate or financing, she was a diligent and hard working employee, and eager to succeed.

18
19
20
21

Although this case has focused on the actions of Kobay, Nationwide, and Emerald City, and the individuals connected with these three entities—it is useful to consider the greater historical context in which their activities were occurring.

22
23
24

[5] Dkt No. 150.

25

DEFENDANT CAMIE BYRON'S
SENTENCING MEMORANDUM - 4

AOKI I SAKAMOTO I GRANT LLP
ONE CONVENTION PLACE, SUITE 1525
701 PIKE STREET
SEATTLE, WA 98101-3933
(206) 624-1900

1  ***The Best, and the Worst, of Times***

2     During the last year, there has been no shortage of wisdom offered about

3  the near meltdown of our financial system.  It has by now been well documented

4  that just a few years ago, the middle of the present decade, was a time of

5  frenetic financial growth and innovation—both of which were fueled by the

6  combination of "extraordinary low interest rates", "surging global investor

7  demand", and a growth in Internet technology.[6]  This convergence of events led

8  to a boom in the mortgage lending industry and the widespread use, and

9  multiplication of uses of, the "subprime mortgage."[7]  Ms. Byron and her co-

10 defendants were all part of this process—but, they were not alone.

11    The proliferation of the "subprime market" was, in turn, in response to the

12 demands for greater returns by investors and an escalation of the home buying

13 frenzy.  By 2005, the middle of the present decade, the housing market was at

14 its apex and many Americans had become housing speculators.[8]

15    The phenomenon of frenzied home buying and mortgage lending lasted,

16 generally, from the Spring 2004 until the Fall 2007, and probably peaked in 2006

17 (Ms. Byron's employment was, generally, from October 2005 until October

18
19
20

21    [6] *Financial Shock*, Mark Zandi (FT Press 2009), p. 10.  Mark Zandi's text
provides a useful, if somewhat breezy, description of the component parts, and their
22 interrelationships, that were instrumental in the recent financial collapse.
     [7] A "subprime mortgage" is intended to refer to a loan to someone with a weak
23 or troubled credit history.
     [8] *Financial Shock*, at 50.
24

25 DEFENDANT CAMIE BYRON'S
   SENTENCING MEMORANDUM - 5

AOKI | SAKAMOTO | GRANT LLP
ONE CONVENTION PLACE, SUITE 1525
701 PIKE STREET
SEATTLE, WA  98101-3933
(206) 624-1900

2008).  "Of the $3 trillion in loans extended to all mortgage borrowers [in 2006], $615 billion were subprime.  $475 billion were alt-A, and $395 billion were jumbo ABMs.  An incredible $250 billion in the riskiest stated-income, no-down payment subprime ARM loans were originated."[9]

As part of her duties, Ms. Byron helped to prepare and submit applications for mortgages on behalf of the customers of either Kobay or Nationwide.  Often, the loan applications were based on the borrower's "stated income"—that is, the prospective borrower "stated", but did not document, his or her claimed income.  This practice was not unique to Ms. Byron, or to the others employed by Kobay and Nationwide.

Nearly "40 percent of the subprime borrowers in 2006 were not required to produce pay stubs or other proof of their net worth".[10]  In the industry, these "stated income" loans were commonly referred to as "liar's loans"—by the applicants, the facilitators, and the banks and other financial institutions that lent the money.  Significantly, these loans were accepted, often willingly, by the lenders—including the lending institutions claiming to be victims in this case.

A combination of events led to the eventual collapse of this scheme:  "the irresponsible availability ability of credit to the less-than-creditworthy; ... a historic

---

[9] *Financial Shock*, at 47.
[10] *House of Cards (A Tale of Hubris and Wretched Excess on Wall Street)* (Doubleday 2009), William D. Cohan, at 318; citing a Report by Credit Suisse Group.

DEFENDANT CAMIE BYRON'S
SENTENCING MEMORANDUM - 6

AOKI I SAKAMOTO I GRANT LLP
ONE CONVENTION PLACE, SUITE 1525
701 PIKE STREET
SEATTLE, WA 98101-3933
(206) 624-1900

1 and ongoing increase in real-estate values; a 'rapid innovation' on Wall Street that

2 made credit risk easier to manufacture, to trade, and, in theory, to hedge."[11]

3 Even the regulators, those entrusted with oversight responsibility of this activity,

4 were lax.[12]  And, as Mr. Zandi observed, the "essential final ingredient" of the

5 subprime market financial disaster "was hubris:  a belief that the ordinary rules of

6 economics and finance no longer applied."[13]

7

8       What was accepted as a common practice eventually became subject to

9 abuse and what has been viewed in retrospect as a vehicle for fraud.  At the

10 time, however, "liar's loans"; subprime mortgages and, later, their securitized

11 packages; and applications thin on documentation became the practice, not the

12 exception.

13 ***Camie Byron Background***

14

15       Ms. Byron is a mother of one daughter, Sydney (11 months).  She lives

16 with Samuel Morisset, whom she has been with for more than six years and is

17 the father of Sydney.

18       Ms. Byron's parents separated when she was 10, and she moved to

19

20 _____

21       [11] *House of Cards*, at 9 (quoting from a March 2008 speech of then President of the Federal Reserve Bank of New York, and now Secretary of the United States Treasury, Timothy Geithner.

22       [12] Sheila C. Bair, Chairwoman of the Federal Deposit Insurance Corporation (FDIC), was recently quoted as acknowledging that "We all could have done a better job." (Quoted in *The New York Times*, November 22, 2009, Sunday Business, at 2).

23       [13] *Financial Shock*, at 4-5.

24

25 DEFENDANT CAMIE BYRON'S
SENTENCING MEMORANDUM - 7

AOKI | SAKAMOTO | GRANT LLP
ONE CONVENTION PLACE, SUITE 1525
701 PIKE STREET
SEATTLE, WA 98101-3933
(206) 624-1900

Washington, from Montana, with her mother.  Ms. Byron began providing for herself at an early age and has always done well in school.  Ms. Byron attended community college and, after transferring, earned her BA degree, in Global Studies, and an MA, in Policy Studies, both from the University of Washington.  Ms. Byron earned her graduate degree while she was working at Kobay (and part time, on weekends, at a restaurant).

As illustrated by the many letters which have been submitted on her behalf, Ms. Byron has been a close family member and good friend.[14]  In addition, Ms. Byron has demonstrated that, despite her involvement with Kobay and Nationwide, she is capable of making the right choices and deserving of trust.  For example, Robert Jones, a Bellevue Farmers Insurance Agent, "would not hesitate to trust" Ms. Byron and would be willing to hire her—even though he knows of her criminal conduct in this case.[15]  Ms. Byron's friends and family members have repeatedly spoken of her kindness, loyalty, and support.

It is against this backdrop, and within this context, that Ms. Byron is asking that this Court not impose a sentence of greater than 24 months—and order that it be served as home detention.  A sentence consistent with this request will allow Ms. Byron's daughter the best of possible care, and is

---

[14] Copies of the letters of support submitted on Ms. Byron's behalf are attached to this Sentencing Memorandum and marked collectively as Exhibit B (B-1 through B-15).

[15] The November 9, 2009 letter from Robert Jones is attached as Exhibit B-7.

DEFENDANT CAMIE BYRON'S
SENTENCING MEMORANDUM - 8

AOKI I SAKAMOTO I GRANT LLP
ONE CONVENTION PLACE, SUITE 1525
701 PIKE STREET
SEATTLE, WA 98101-3933
(206) 624-1900

appropriate given the circumstances of this offense and the relevant factors of the Sentencing Guidelines.  There is no constructive benefit—to Ms. Byron, her family, or society at large—in confining Ms. Byron to a term of imprisonment served in a Bureau of Prisons facility.

***Camie Byron's Arrest and Criminal Conviction***

Ms. Byron was arrested on March 26, 2009 but released and placed on pretrial supervision that same day.[16]  On July 30, 2009, Ms. Bryon pled guilty to one count of conspiracy to commit bank fraud, mail fraud, and wire fraud.[17]

Since her release, Ms. Byron has been in full compliance with all of the conditions imposed upon her by this Court while she was under supervision by Pretrial Services.

During her period of release, Ms. Byron has worked with the government and provided substantial assistance.

***Sentencing Guideline Calculation***

The statutory maximum term of imprisonment for conspiracy to commit bank, mail, or wire fraud is 5 years (or, 60 months).  18 U.S.C. § 371.  It is also instructive to review the Sentencing Guideline calculations.

Ms. Byron's base offense level is 6, pursuant to USSG §2B1.1(a). Because the loss amount is, likely, greater than $2,500,000 but less than

[16] Dkt. No. 80.
[17] Dkt. No. 150.

DEFENDANT CAMIE BYRON'S
SENTENCING MEMORANDUM - 9

AOKI I SAKAMOTO I GRANT LLP
ONE CONVENTION PLACE, SUITE 1525
701 PIKE STREET
SEATTLE, WA 98101-3933
(206) 624-1900

1   $7,00,000, there is an 18 point increase, pursuant to USSG §2B1.1(b)(1)(J).[18]

2   Ms. Byron has accepted responsibility and timely notified the government of her

3   intention to plead guilty, thereby triggering a 3 point reduction pursuant to USSG

4   §3E1.1.  On these facts, the parties are in agreement.

5
        The United States Probation Office (USPO) has added 2 points to Ms.
6
    Byron's offense level, based on its contention that "there were 10 identified
7
    banks that were victimized", pursuant to USSG §2B1.1(b)(2)(A).[19]   For the
8
9   purpose of calculating Ms. Bryon's Total Offense Level, however, this conclusion

10  is in error.

11
        As illustrated earlier, the collective role of the lending institutions as willing
12
    participants in the transactions they now claim to have suffered losses should
13
    disqualify them from being classified as "victims", at least for the purpose of the
14
15  guideline calculations.

16      Ms. Byron requests, therefore, that this Court not add two points to her

17  offense level, based on the number of victims.

18      Moreover, Ms. Byron's offense level should be reduced by an additional

19
    two points, pursuant to USSG §3B1.2(b), given that her participation, or role,
20
    was largely minor.   The failure of the USPO to recommend this reduction for role
21

22
    _____
23      [18] An evidentiary hearing has been scheduled for January 29, 2010 to
    determine the amount of the claimed losses subject to restitution.
24      [19] *Presentence Report* (November 27, 2009), at ¶ 42, p. 13.

25  DEFENDANT CAMIE BYRON'S                    AOKI I SAKAMOTO I GRANT LLP
    SENTENCING MEMORANDUM - 10                 ONE CONVENTION PLACE, SUITE 1525
                                               701 PIKE STREET
                                               SEATTLE, WA 98101-3933
                                               (206) 624-1900

1   is also in error.  Ms. Byron was employed by either Kobay or Nationwide from

2   October 2005 through August 2007.  From August 2007 to October 2008, Ms.

3   Byron still provided assistance, but as an independent contractor.  By October

4   2008, through the time of her arrest in March 2009, Ms. Byron's work load was

5   substantially diminished as she was on maternity leave.  During most of her time

6   with these two companies, she served as a loan officer, processing loans as

7   directed.[20]

8

9       If Ms. Byron's requests were accepted, her Total Offense Level would be

10  19, rather than 23 (as calculated by the USPO).[21]

11      The USPO correctly calculated Ms. Byron's Criminal History Calculation, at

12  category II.   This determination, however, unfairly overstates Ms. Byron's

13  background and should not be strictly adhered to by this Court.  Both offenses

14  occurred more than 10 years ago—and Ms. Byron has successfully addressed the

15  circumstances underlying her prior offenses.

16

17      Despite these objections, it is worth noting that the USPO has

18

19

20  [20] Ms. Byron was employed by Kobay from October 2005 until January 2007
    and by Nationwide from January 2007 until August 2008.  From August 2008 until
    October 2008, Ms. Byron was an independent contractor for Nationwide.  Ms. Byron's
21  role in the conspiracy did increase for a period of time—as evidenced by her direct
    purchases of 3 separate properties.  At the time of her arrest, however, Ms. Byron's
22  dealings with her co-defendants had been significantly reduced for more than months
    as she was spending time with her new daughter.
23  [21] The sentencing range, under the Guidelines, would be 33 to 41 months,
24  rather than 51 to 60 months.

25  DEFENDANT CAMIE BYRON'S                    AOKI I SAKAMOTO I GRANT LLP
    SENTENCING MEMORANDUM - 11                ONE CONVENTION PLACE, SUITE 1525
                                              701 PIKE STREET
                                              SEATTLE, WA 98101-3933
                                              (206) 624-1900

1  recommended a period of custody of 24 months.  This recommendation, which is

2  below the Sentencing Guideline range it calculated, is based, in part, on the

3  USPO's recognition of Ms. Byron's cooperation with the government, knowing

4  full well that she would not receive the benefit of a government motion for

5  downward departure (pursuant to USSG §5K1.1).

6

7  ***Any Term of Confinement Should Be Limited to Home Detention***

8       Ms. Byron respectfully requests that, should this Court impose a term of

9  confinement, Ms. Byron be subject to Home Detention, as authorized by USSG §

10  5F1.2.

11      As noted earlier, home detention is consistent with the goals of the

12  Sentencing Guidelines and provides the best solution for Sydney, Ms. Byron's

13  daughter.  Having suffered through the process to date—arrest, indictment,

14  conviction—Ms. Byron has been substantially punished.  Yet to come will be the

15

16  determination of restitution.

17      As a convicted felon, who may be obligated to owe more than she could

18  ever repay, Ms. Byron has lost much of what she dreamed of and worked so hard

19  to achieve.

20

21  ***This Court Should Allow Ms. Byron to Conduct Deposition Discovery***

22      Although it appears that the "victim banks" have attempted to document

23  the losses they claim to have incurred, the data and other information received to

24

25  DEFENDANT CAMIE BYRON'S
    SENTENCING MEMORANDUM - 12

AOKI | SAKAMOTO | GRANT LLP
ONE CONVENTION PLACE, SUITE 1525
701 PIKE STREET
SEATTLE, WA 98101-3933
(206) 624-1900

1   date does not fully address several important questions concerning many of their

2   assumptions and conclusions.  This is not surprising, given the complexity of the

3   data and the uncertainties of the underlying assumptions.

4
    At present, the hearing to determine the amount of restitution is scheduled

5
    to occur on January 29, 2010.  In order to make this hearing as productive and
6
    efficient for the Court as possible, Ms. Byron will need to meet with, and
7
8   question, the appropriate representatives of the "victim banks" before the

9   hearing.  It is likely that these preliminary meetings will be the most productive if

10  Ms. Byron is able to conduct depositions of the appropriate representative(s) of

11  the each "victim bank".

12
    This Court, of course, has the power to authorize deposition discovery.
13
    Fed. R. Crim. P.  15.  Each of the "victim banks" should provide those persons
14
15  most knowledgeable about the topics relevant to its claimed losses.  *See e.g.*,

16  Fed. R. Civ. P. 30(b)(6).

17                                     **CONCLUSION**

18  Ms. Byron has demonstrated that she is capable of taking positive steps to

19
    get her life back on track and to serve as a better example to her family, her
20
    friends, and this Court.
21

22

23

24

25  DEFENDANT CAMIE BYRON'S              AOKI I SAKAMOTO I GRANT LLP
    SENTENCING MEMORANDUM - 13          ONE CONVENTION PLACE, SUITE 1525
                                        701 PIKE STREET
                                        SEATTLE, WA  98101-3933
                                        (206) 624-1900

1    It is respectfully requested that the sentence imposed by this Court provide

2  the opportunity for her to continue her productive and constructive efforts at

3  successfully putting her life in the right direction.

4    DATED this 30th day of November , 2009.

5

6                          AOKI SAKAMOTO GRANT LLP

7                          By _____

8                             Jeffrey C. Grant, WSBA #11046
                            Attorneys for Defendant Camie Byron

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  DEFENDANT CAMIE BYRON'S                    AOKI I SAKAMOTO I GRANT LLP
    SENTENCING MEMORANDUM - 14                 ONE CONVENTION PLACE, SUITE 1525
                                               701 PIKE STREET
                                               SEATTLE, WA  98101-3933
                                               (206) 624-1900

## CERTIFICATE OF SERVICE

I certify that on November 30, 2009, I electronically filed the Defendant Camie Byron's Sentencing Memorandum (together with the attached Exhibits A and B) and this Certificate of Service with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Allen R. Bentley, Jesse Guerrero Cantor, Catherine Ann Chaney, John R. Crowley, Peter Offenbecher, Richard J Troberman; and to Assistant United States Attorneys Carl H. Blackstone, James D. Oesterle, and Richard E. Cohen.

Copies of the Sentencing Memorandum and attached Exhibits were sent to Untied States Probation Officer Andrew Lorenzen via facsimile and electronically.

By _____
Jule Sprenger
Legal Assistant
Aoki Sakamoto Grant LLP
701 Pike Street
Suite 1525
Seattle, WA 98101
Telephone: 206-624-1900
Fax: 206-442-4396
Email: jule@aoki-sakamoto.com

DEFENDANT CAMIE BYRON'S
SENTENCING MEMORANDUM - 15

AOKI I SAKAMOTO I GRANT LLP
ONE CONVENTION PLACE, SUITE 1525
701 PIKE STREET
SEATTLE, WA 98101-3933
(206) 624-1900